**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

KEVIN D. MONTGOMERY
a/k/a MONTGOMERY PROPERTY MANAGEMENT
SCHANTEY H. MONTGOMERY
a/k/a MONTGOMERY PROPERTY MANAGEMENT

                Debtors

Case No.  04-34707

N. DAVID ROBERTS, JR., TRUSTEE

                Plaintiff

            v.

Adv. Proc. No.  05-3099

KEVIN D. MONTGOMERY
SCHANTEY H. MONTGOMERY

                Defendants

## M E M O R A N D U M

**APPEARANCES:**    BAILEY, ROBERTS & BAILEY, PLLC
                            Robert M. Bailey, Esq.
                            Post Office Box 2189
                            Knoxville, Tennessee  37901
                            Attorneys for Plaintiff

                            BARBARA W. CLARK, ESQ.
                            2415 East Magnolia Avenue
                            Knoxville, Tennessee  37917
                            Attorney for Defendants/Debtors

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This adversary proceeding is before the court upon the Complaint filed by the Plaintiff, N. David Roberts, Jr., Trustee, on May 12, 2005, objecting to the discharge of the Debtors. Pursuant to the Pretrial Order entered on September 13, 2005, the Plaintiff's objection to discharge is grounded on 11 U.S.C.A. § 727(a)(2)(A), (2)(B), and (4)(A) (West 2004). The trial was held on February 12, 2007, and the record before the court consists of nineteen exhibits introduced into evidence, along with the testimony of the Plaintiff, both Debtors, and Carl Brenner.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(J) (West 2006).

# I

On September 3, 2004, the Debtors filed the Voluntary Petition commencing their Chapter 7 bankruptcy case, and the Plaintiff was duly appointed Chapter 7 Trustee. The Debtors attended their meeting of creditors, conducted by the Plaintiff on October 12, 2004, at which time they testified that their statements and schedules were true and correct and that they had fully disclosed their assets and liabilities. At the meeting of creditors, the Trustee also provided the Debtors with a letter he customarily gives to consumer debtors, advising them, *inter alia*, that

> There are civil and criminal penalties for giving false information or false testimony during your bankruptcy case including the statements and schedules you signed, your testimony at the meeting of creditors and in court. Your honest and complete disclosure of your business and financial affairs is very important and failure to do so could result in a criminal fine and/or imprisonment and/or denial of your discharge. If you discover you have given me any incorrect information in your written bankruptcy documents or in your testimony at the meeting of creditors, please notify me in writing at once of the correct information. It is better for you to disclose incorrect information to me than for me to discover it on my own.

TRIAL EX. 3.

## II

Chapter 7 debtors receive a general discharge of all pre-petition debts under 11 U.S.C.A. § 727, which provides in material part:

> (a) The court shall grant the debtor a discharge, unless—
>
> . . . .
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition;
>
> . . . .
>
> (4) the debtor knowing and fraudulently, in or in connection with the case—
>
> > . . . .
> >
> > (A) made a false oath or account[.]

11 U.S.C.A. § 727(a).[1] These limitations furnish creditors with "a vehicle under which *abusive* debtor conduct can be dealt with by denial of discharge." *Blockman v. Becker (In re Becker)*, 74 B.R. 233, 236 (Bankr. E.D. Tenn. 1987) (quoting *Harman v. Brown (In re Brown)*, 56 B.R. 63, 66 (Bankr. D.N.H. 1985)). Section 727(a) is liberally construed in favor of the debtor, and the party

---

[1] "Except as provided in section 523 . . ., a discharge under [727(a)] discharges the debtor from all debts that arose before the date of the order for relief under this chapter[.]" 11 U.S.C.A. § 727(b) (West 2004). Accordingly, a Chapter 7 discharge relieves "honest but unfortunate" debtors of their debts and allows them a "fresh start" through this discharge. *Buckeye Retirement, LLC v. Heil (In re Heil)*, 289 B.R. 897, 901 (Bankr. E.D. Tenn. 2003) (quoting *In re Krohn*, 886 F.2d 123, 125 (6th Cir. 1989) (citing *Local Loan Co. v. Hunt*, 54 S. Ct. 695, 699 (1934))).

objecting to discharge bears the burden of proof by a preponderance of the evidence. *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000); *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994); FED. R. BANKR. P. 4005.

### A

The Plaintiff first objects to the Debtors' discharge under § 727(a)(2)(A), which consists of two elements: (1) the disposition of property, including transfer or concealment, within one year of filing their bankruptcy petition, and (2) the Debtors' subjective intent to hinder, delay, or defraud creditors by disposing of their property. *Keeney*, 227 F.3d at 683-84 (citing *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1240 (9th Cir. 1997)); *see also Cuervo v. Snell (In re Snell)*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999) (stating that a plaintiff need not prove the debtor intended to hinder, delay, and defraud creditors, since proof of any one satisfies § 727(a)(2)(A)). Harm suffered by the Plaintiff is irrelevant for the purposes of § 727(a)(2)(A). *Clean Cut Tree Serv. v. Costello (In re Costello)*, 299 B.R. 882, 894 (Bankr. N.D. Ill. 2003).

Section 727(a)(2)(A) requires proof of actual fraudulent intent, as constructive fraud will not suffice. *E. Diversified Distrib., Inc. v. Matus (In re Matus)*, 303 B.R. 660, 672 (Bankr. N.D. Ga. 2004). Accordingly, in order to prevail under this subsection, the Plaintiff must prove that the Debtors possessed an actual intent to deceive; however, because of the inherent difficulties in proving intent, he may use circumstantial evidence, including evidence of the Debtors' conduct, to establish their intent. *Buckeye Retirement Co., LLC v. Heil (In re Heil)*, 289 B.R. 897, 907 (Bankr.

E.D. Tenn. 2003) (citing *Hunter v. Sowers (In re Sowers)*, 229 B.R. 151, 157 (Bankr. N.D. Ohio 1998)).

In order to determine actual intent, based upon circumstantial evidence, many courts consider the following "badges of fraud":

> (i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possession, benefit, or use of the property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question; (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (viii) the general chronology of the events and transactions under inquiry.

*Matus*, 303 B.R. at 672-73; *see also Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718, 723 (Bankr. E.D. Mich. 2003). Additional factors indicating a debtor's actual intent include

> whether the transaction is conducted at arm's length; whether the debtor is aware of the existence of a significant judgment or over-due debt; whether a creditor is in hot pursuit of its judgment or claim and whether the debtor knows this; and the timing of the transfer relative to the filing of the petition.

*Adamson v. Bernier (In re Bernier)*, 282 B.R. 773, 781 (Bankr. D. Del. 2002). If the Plaintiff establishes the existence of badges of fraud, the burden shifts to the Debtors to rebut the presumption. *Village of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002); *see also Nashville City Bank & Trust Co. v. Peery (In re Peery)*, 40 B.R. 811, 815 n.6 (Bankr. M.D. Tenn. 1984). Moreover "[j]ust one wrongful act may be sufficient to show actual intent . . . [although] a continuing pattern of wrongful behavior is a stronger indication [thereof]." *Sowers*, 229 B.R. at 157.

**B**

The Plaintiff also objects to the Debtors' discharge under § 727(a)(2)(B). Whereas § 727(a)(2)(A) encompasses the Debtors' pre-petition acts, their post-petition actions fall within the scope of § 727(a)(2)(B), which requires proof that the Debtors "(1) transferred, removed, destroyed, mutilated, or concealed property of [their] bankruptcy estate, (2) with actual intent to hinder, delay, or defraud a creditor or an officer of the estate, (3) after the Petition Date." *Harker v. West (In re West)*, 328 B.R. 736, 752 (Bankr. S.D. Ohio 2004). "The intent of [§ ] 727(a)(2)(B) is to deny discharge to a debtor who fails to disclose transactions regarding his assets subsequent to filing his petition in bankruptcy." *Sicherman v. Rivera (In re Rivera)*, 338 B.R. 318, 328 (Bankr. N.D. Ohio 2006) (quoting *Govaert v. S. Nat'l Bank of N.C. (In re Caserta)*, 182 B.R. 599, 606 (Bankr. S.D. Fla. 1995)). Once a creditor establishes its case, the burden shifts to the debtor to provide the court with a convincing explanation for the concealment. *Royer v. Smith (In re Smith)*, 278 B.R. 253, 257 (Bankr. M.D. Ga., 2001). As with § 727(a)(2)(A), the Plaintiff may establish the Debtors' intent under § 727(a)(2)(B) through evidence of their conduct. *Sowers*, 229 B.R. at 157.

**C**

The Plaintiff additionally argues that the Debtors should be denied their discharge by virtue of § 727(a)(4)(A), for which the Plaintiff must prove: (1) the Debtors made a statement under oath; (2) that was false; (3) they knew that the statement was false when they made it; (4) they fraudulently intended to make the statement; and (5) the statement materially related to the bankruptcy case. 11 U.S.C.A. § 727(a)(4)(A); *Keeney*, 227 F.3d at 685; *Hendon v. Oody (In re Oody)*, 249 B.R. 482, 487

(Bankr. E.D. Tenn. 2000). This subsection includes both affirmative false statements and omissions, *Searles v. Riley (In re Searles)*, 317 B.R. 368, 377 (B.A.P. 9th Cir. 2004), and statements are material for the purposes of § 727(a)(4) if they "bear[] a relationship to the [debtor's] business transactions or estate, or concern[] the discovery of assets, business dealings, or the existence and disposition of property." *Keeney*, 227 F.3d at 686 (quoting *Beaubouef v. Beaubouef* (*In re Beaubouef*), 966 F.2d 174, 178 (5th Cir. 1992)).

A debtor's statements and schedules are executed under oath and penalty of perjury. FED. R. BANKR. P. 1008; OFFICIAL FORM 1 (Voluntary Petition); OFFICIAL FORM 7 (Statement of Financial Affairs); *Hamo v. Wilson (In re Hamo)*, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999). Statements made by the Debtors at their meeting of creditors were made under oath. *See* 11 U.S.C.A. § 343 (West 2004) ("The debtor shall appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title."); FED. R. BANKR. P. 2003(c). Similarly, testimony and statements given in a deposition or 2004 examination are under oath. *See, e.g., Brumley v. Wingard*, 269 F.3d 629, 642 (6th Cir. 2001).

Knowledge that a statement is false can be evidenced by a demonstration that a debtor "knew the truth, but nonetheless failed to give the information or gave contradictory information." *Hamo*, 233 B.R. at 725; *Sowers*, 229 B.R. at 158 (citing *Pigott v. Cline (In re Cline)*, 48 B.R. 581, 584 (Bankr. E.D. Tenn. 1985)). Fraudulent intent "involves a material representation that [the debtor knows] to be false, or . . . an omission that [the debtor knows] will create an erroneous impression." *Keeney*, 227 F.3d at 685 (quoting *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)). Reckless disregard or indifference for the truth also demonstrates fraudulent intent. *Keeney*, 227 F.3d at 686;

7

*Beaubouef*, 966 F.2d at 178. Likewise, intent may be inferred from the debtor's conduct, and a continuing pattern of omissions and/or false statements in his bankruptcy schedules exhibits reckless indifference. *Hamo*, 233 B.R. at 724-25; *Sowers*, 229 B.R. at 159. On the other hand, courts do not generally find that debtors who mistakenly or inadvertently give false information, and those who amend their schedules and report omissions or misstatements prior to or during their meetings of creditors possess the requisite fraudulent intent for denial of their discharge under § 727(a)(4)(A). *Keeney*, 227 F.3d at 686; *Gold v. Guttman (In re Guttman)*, 237 B.R. 643, 647 (Bankr. E.D. Mich. 1999).

### III

Here, the court finds that the Plaintiff has met his burden of proof that the Debtors should be denied their discharge under § 727(a)(2)(A), (2)(B), and (4)(A). The record is replete with undisclosed transfers by the Debtors, both pre-petition and post-petition, and with false statements and oaths. Based upon the record before it, the court is compelled to wonder at the cavalier and offhand manner in which the Debtors completed their Statement of Financial Affairs and schedules. Surely, they had to have some understanding that the Chapter 7 Trustee would do more than just review their statements and schedules without conducting at least a cursory examination and investigation of the disclosures made in those statements and schedules. The lack of disclosure is so pervasive, with the actions of the Debtors so intertwined, that the court will address the § 727(a)(2)(A), (2)(B), and (4)(A) issues collectively rather than individually.

## A

Paragraph 3a of the Statement of Financial Affairs, entitled "Payments to creditors," requires the Debtors to disclose payments aggregating more than $600.00 to any creditor made within ninety days of bankruptcy, and paragraph 3b of the Statement of Financial Affairs requires disclosure of payments made to insiders[2] within one year of the filing of bankruptcy. However, the Debtors' Statement of Financial Affairs, filed contemporaneously with the Voluntary Petition on September 3, 2004, did not list under either paragraph 3a or paragraph 3b the following payments totaling $8,200.00 made to Anita Montgomery, Kevin Montgomery's mother: (1) a $7,000.00 payment by check dated July 1, 2004, designated as a "Loan Repayment"; and (2) a payment by check dated August 23, 2004, in the amount of $1,200.00. *See* COLL. TRIAL EX. 1; COLL. TRIAL EX. 4. The Plaintiff discovered these transfers to Anita Montgomery after obtaining copies of cancelled checks from the Debtors subsequent to the October 12, 2004 creditors' meeting.

The Debtors' testimony regarding these payments is conflicting. At a January 11, 2005 examination conducted by the Plaintiff pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, Kevin Montgomery testified that the $1,200.00 payment was to "repay her for some money she loaned us . . . [t]o probably help us out, buy groceries or something." TRIAL EX. 18, at 97. However, at trial, both Debtors testified that Anita Montgomery used her credit card to allow them to regain possession of an automobile that had been repossessed. They further testified that they did not consider this advance from Anita Montgomery a loan, and, because she was Kevin

---

[2] Relatives of a debtor fall within the Bankruptcy Code's definition of an "insider." *See* 11 U.S.C.A. § 101(31A) (West 2004).

9

Montgomery's mother, they "had to pay her back." Kevin Montgomery testified that "I didn't see her as a [creditor]." In effect, the Debtors gave no credible reason for their failure to disclose these two pre-petition transfers to Anita Montgomery, the largest of which took place sixty-five days before they filed their petition while the other took place only eleven days before the petition was filed. Other transfers occurring within the same period of time were disclosed in the Debtors' Statement of Financial Affairs. *See* COLL. TRIAL EX. 1.

These transfers clearly fall within the scope of § 727(a)(2)(A) as transfers of property within the year immediately preceding the bankruptcy case, and the failure to disclose them falls within the scope of § 727(a)(4)(A) as material omissions. Although the Debtors both testified at trial that they repaid the $7,000.00 "loan" to Kevin Montgomery's mother just over two months prior to filing their case as repayment for using her credit card in order to retain the Debtors' truck which had been repossessed, and they offered no specific testimony with respect to the $1,200.00 payment made only eleven days prior to their bankruptcy filing, they did not elaborate or fully explain how this allowed them to treat this debt with precedence over their other unsecured creditors.

Furthermore, Kevin Montgomery's testimony that he did not consider his mother to be a creditor is disingenuous, and the court can infer the Debtors' intent to deceive by the Debtors' actions of paying these transfers and their lack of action by failing to disclose them in their statements and schedules. Several of the aforementioned badges of fraud are present, including the insider relationship, the Debtors' financial condition at the time of the transfers, the secrecy of the transfer which was not disclosed but discovered by the Plaintiff though a review of the Debtors' bank statements requested at the meeting of creditors, and the timing of these transfers, falling within two

months and two weeks, respectively, of the date upon which the Debtors filed their Voluntary Petition. Based upon these factors, the court can easily deduce that the Debtors made the payments totaling $8,200.00 to Kevin Montgomery's mother in an attempt to hinder payment of those funds to other unsecured creditors.

**B**

Similarly, paragraph 10 of the Statement of Financial Affairs, entitled "Other transfers," requires the disclosure of transfers of property, either absolutely or as security, occurring within one year prior to the filing of a bankruptcy petition. On their Statement of Financial Affairs, the Debtors stated that they had "None" when, in fact, they transferred three parcels of real property within the year prior to the commencement of their bankruptcy case.

First, on August 15, 2003, the Debtors executed a Warranty Deed to Frankie Joe Parker and Brenda Marie Parker transferring their interest in a house and lot located at 4708 Sims Road, Knoxville, Tennessee (Sims Road Property).[3] TRIAL EX. 10. The $115,000.00 purchase price for the Sims Road Property is evidenced by a Promissory Note executed by the purchasers dated August 15, 2003, requiring monthly payments to the Debtors of $891.60 over twenty years. TRIAL EX. 9. The Promissory Note is secured by a Deed of Trust of the same date which was recorded on September 18, 2003. TRIAL EX. 11. The Debtors executed a Corrected Warranty Deed in favor of the Parkers on October 9, 2003, which was recorded post-petition on October 18, 2004. TRIAL EX.

---

[3] This transfer was not perfected until September 18, 2003, when the Warranty Deed was recorded in the Office of the Register of Deeds for Knox County, Tennessee, thereby falling within the one-year period set forth in paragraph 10 of the Statement of Financial Affairs.

12. In addition to their failure to disclose the sale of the Sims Road Property, the Debtors did not list the Promissory Note, the monthly payments derived therefrom, and/or the Deed of Trust as assets of their estate in the statements and schedules filed with their Voluntary Petition.

Additionally, on September 15, 2003, the Debtors executed a Warranty Deed transferring their interest in residential property at 250 E. Anderson Avenue, Knoxville, Tennessee (Anderson Avenue Property), to Kristian Travis Cummings and Paul Douglas for $130,000.00. TRIAL EX. 6. The purchase price was secured in its entirety by a Deed of Trust executed by the purchasers in favor of the Debtors that was recorded on September 18, 2003.[4] TRIAL EX. 7. The Debtors executed a Corrected Warranty Deed on October 9, 2003, which was recorded post-petition on October 18, 2004. TRIAL EX. 8. Again, in addition to their failure to disclose the sale of the Anderson Avenue Property in their Statement of Financial Affairs, the Debtors did not list the Promissory Note, monthly payments, and/or the Deed of Trust associated with this sale in the statements and schedules accompanying their Voluntary Petition.

With respect to these transfers of real property, the Debtors testified that they started a business during either 1999 or 2000 under the name of Montgomery Property Management through which they engaged in the buying and selling of rental property. Kevin Montgomery located the properties to be purchased, and Schantey Montgomery paid the bills, did the banking, and generally ran the business. They did not, however, offer any plausible explanation for their failure to disclose the pre-petition transfers of the Sims Road Property and the Anderson Avenue Property other than

---

[4] The Deed of Trust recites that it secures a Promissory Note in the principal amount of $130,000.00, calling for monthly payments to the Debtors of $1,168.48 for fifteen years. The Promissory Note was not introduced into evidence.

12

"oversight." Nor did the Debtors offer any testimony to explain the fact that they recorded the Corrected Warranty Deeds for each property on October 18, 2004, six days following their meeting of creditors.

Furthermore, by his attitude exhibited from the witness stand, Kevin Montgomery appeared to believe that because the Plaintiff was able to discover these two transfers from records provided to him by the Debtors subsequent to their October 12, 2004 creditors' meeting, the Debtors' failure to list them in their statements and schedules or otherwise disclose them to the Plaintiff was immaterial. The court disagrees. The Debtors were clearly well aware enough of these transfers to record the Corrected Warranty Deeds, executed a year prior to the commencement of their bankruptcy case, with the Register of Deeds for Knox County, Tennessee, on October 18, 2004. This action in and of itself, coupled with their failure to disclose these property transfers to the Plaintiff at their meeting of creditors, leave no doubt as to the Debtors' intent to deceive. It is, therefore, inconsequential that the Debtors filed the "Debtors' Post-Petition Amended Schedules" on February 22, 2005, amending their Schedule B - Personal Property to include the Promissory Notes and Deeds of Trust associated with the transfers of the Sims Road Property and the Anderson Avenue Property, listing both Promissory Notes and Deeds of Trust as being located "[i]n debtor's possession." *See* TRIAL EX. 2. Clearly, they only sought to amend their statements and schedules once the Plaintiff discovered the transfers of these real properties; however, the fact that the Debtors amended their schedules after the meeting of creditors cannot cure the deficiencies because they did not immediately do so, and they only amended after being discovered.

The Debtors also failed to disclose a sale of real property in Hunt County, Texas (Texas Property) for the purchase price of $125,500.00 on June 23, 2004. *See* TRIAL EX. 13. After payment of a mortgage indebtedness on the real property, the Debtors realized $11,811.00 from the sale of the Texas Property, of which they paid $7,000.00 to First Peoples Bank to catch up their loans and stop a foreclosure. And yet, with respect to this transfer, the Debtors' testimony is once again contradictory. At the January 11, 2005 Rule 2004 examination, Kevin Montgomery acknowledged that the Debtors had received $11,811.00 from the sale of the Texas Property. *See* TRIAL EX. 18, at 138-39. At trial, however, he testified that the Debtors did not receive anything from the sale of this property. But upon cross-examination by the Plaintiff's attorney, Kevin Montgomery testified that "I don't remember getting anything from the Texas property." This testimony was directly contradicted by Schantey Montgomery's acknowledgment in her testimony that the parties did, in fact, receive the $11,811.00 net sale proceeds.

The court finds that the Debtors' failure to list this transfer in their Statement of Financial Affairs also evidences an intent to deceive, or at the very least, a reckless indifference to the truth. The transfer occurred only three months prior to the filing of their bankruptcy case, netting them over $11,000.00, from which they paid $7,000.00 to First Peoples Bank.[5] And yet, neither of the Debtors offered any explanation for their failure to disclose the June 23, 2004 sale of the Texas Property and their receipt of the net proceeds therefrom in their Statement of Financial Affairs.

---

[5] The court notes that the Debtors did list a payment in the amount of $6,000.00 in July 2004 to First Peoples Bank in their Statement of Financial Affairs. It is only logical that if the Debtors could recall making a large lump sum payment to First Peoples Bank while filling in their Statement of Financial Affairs, they should likewise recall the transfer by which they received the funds to make this lump sum payment.

14

## C

In addition to failing to disclose the transfers of real property previously discussed, the Debtors also failed to disclose the existence of lease agreements between themselves and third parties resulting in the payment of rent proceeds to the Debtors which were not turned over to the Plaintiff. On June 22, 2004, approximately ten weeks prior to the commencement of his bankruptcy case, Kevin Montgomery entered into a Residential Lease Agreement with Carl Brenner, whereby he leased property to Mr. Brenner at 2448 Piney Grove Church Road, Knoxville, Tennessee, for a twelve-month period. Pursuant to the terms of the lease, Mr. Brenner paid a security deposit of $1,500.00 and made monthly rental payments to the Debtors of $1,500.00. *See* TRIAL EX. 15. The record establishes that Mr. Brenner made the monthly lease payments for July, August, September, October, November, and December 2004, and for January and February 2005. *See* COLL. TRIAL EX. 16. Nevertheless, the Debtors did not disclose in their statements and schedules the Residential Lease Agreement with Mr. Brenner, nor did they disclose the $1,500.00 security deposit.[6] Furthermore, none of the six monthly lease payments deposited by the Debtors after the commencement of their bankruptcy case on September 3, 2004, totaling $9,000.00, were turned over to the Plaintiff.[7]

---

[6] The testimony is conflicting regarding payment of the $1,500.00 security deposit by Mr. Brenner. Mr. Brenner testified that he paid the deposit with cash at the time the lease was signed, but that he did not obtain a receipt. Kevin Montgomery testified that the security deposit was never paid.

[7] The check for the September rent is dated September 1, 2004, but was not deposited into the Debtors' joint checking account at First Tennessee Bank until September 8, 2004, five days after they commenced their bankruptcy case.

In his testimony, Kevin Montgomery acknowledged receiving the six $1,500.00 monthly rental checks totaling $9,000.00 from Mr. Brenner after the Debtors filed bankruptcy and depositing these checks to the Debtors' bank account at First Tennessee Bank. He also acknowledged, without explanation, that the Debtors did not turn these funds over to the Plaintiff. Similarly, Schantey Montgomery testified that she was involved with the Brenner Lease and that the Plaintiff never requested that they turn over any rent received after the commencement of their bankruptcy case.

Additionally, on January 12, 2005, Kevin Montgomery entered into a Residential Lease Agreement with Josh Smith whereby he leased a residence to Mr. Smith at 2456 Piney Grove Church Road, Knoxville, Tennessee. *See* TRIAL EX. 14. Under the terms of this lease, Mr. Smith made a $500.00 damage deposit and was required to make monthly lease payments of $1,250.00. This lease was entered into without the knowledge of the Plaintiff, who subsequently evicted the Lessee. Kevin Montgomery acknowledged that he received the $500.00 security deposit called for in the lease and that he did not turn it over to the Plaintiff, testifying that "it was only $500.00." Accordingly, there is no dispute that no portion of the $500.00 deposit was remitted to the Plaintiff.[8] Schantey Montgomery testified that she was not personally involved with respect to the Smith Lease.

**D**

The Debtors also failed to disclose all of their personal property in their statements and schedules. With respect to paragraph 21 of Schedule B - Personal Property, entitled "Patents,

---

[8] Interestingly, Kevin Montgomery disclosed in this Residential Lease Agreement that he was in bankruptcy, and the Lessee agreed to vacate the premises upon demand of the Trustee. The record does not establish that Mr. Smith made any of the monthly lease payments.

16

Copyrights, and Other Intellectual Property," the Debtors stated that, at the time they filed for bankruptcy, they owned "None." The Plaintiff, upon reviewing records turned over to him by the Debtors, discovered that this is, in fact, untrue, based upon an August 17, 2004 letter to Kevin Montgomery from one of the Debtors' scheduled creditors, a patent attorney. This letter advises Mr. Montgomery that a three-year maintenance fee for two patents was due, that the fee should be paid by February 16, 2005, to avoid incurring a surcharge, and that the patents would be subject to cancellation by the United States Patent Office if the maintenance fee was not paid by November 15, 2004. *See* TRIAL EX. 5.[9]

With regard to the Debtors' failure to disclose patents, Kevin Montgomery acknowledged receipt of the August 17, 2004 letter from the patent attorney, testifying that he had concluded that the patents expired prior to the date the Debtors filed their bankruptcy case. However, the Patent Renewal Notice appended to the August 17, 2004 letter clearly states in offset type that the payment necessary to avoid cancellation of the patents should be "**Made payable to Patent Renewal Service no later than November 15, 2004.**" Even if the Debtors did not fail to disclose the existence of the two patents with an intent to deceive, when taken together with all of the material omissions and false statements, their failure to list the patents among their personal property exhibits a reckless indifference for the veracity of their statements and schedules.

---

[9] The maintenance fee was not paid by the Plaintiff or the Debtors, and the patents have presumably been cancelled.

## IV

In summary, the court finds that the Debtors' Statement of Financial Affairs and their bankruptcy schedules contain numerous material false statements and omissions. These omissions are glaring and were made intentionally, with the intent to deceive, or at the very least, with a reckless indifference for the truth contained therein. As such, the Plaintiff has met his burden of proof that the Debtors are not entitled to a discharge pursuant to 11 U.S.C.A. § 727(a)(4)(A). Additionally, the court finds that the Debtors transferred funds and property within the year preceding the filing of their bankruptcy case, consisting of $8,200.00 to Kevin Montgomery's mother, Anita Montgomery, and real property at 4708 Sims Road, Knoxville, Tennessee, 250 E. Anderson Avenue, Knoxville, Tennessee, and Hunt County, Texas, with the intent to hinder, delay, and/or deceive their creditors, justifying a denial of their discharge under 11 U.S.C.A. § 727(a)(2)(A). Finally, their concealment of post-petition rental income received from Carl Brenner and Josh Smith also supports the denial of the Debtors' discharge under § 727(a)(2)(B).

A judgment consistent with this Memorandum will be entered.

FILED:  February 27, 2007

>BY THE COURT
>
>/s/  RICHARD STAIR, JR.
>
>RICHARD STAIR, JR.
>UNITED STATES BANKRUPTCY JUDGE